IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JONATHAN EDWARD JERNIGAN,   :
:
 Petitioner   :
: CIVIL NO. 1:11-CV-1234
:
 v.   : Hon. John E. Jones III
:
:
WARDEN WILLIAM SCISM,   :
:
 Respondent   :

## **MEMORANDUM**

November 8, 2011

**THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:**

Petitioner Jonathan Edward Jernigan ("Petitioner" or "Jernigan"), an inmate presently confined at the Low Security Correctional Institution at Allenwood ("LSCI Allenwood") in White Deer, Pennsylvania, initiated the above action *pro se* by filing a Petition for Writ of Habeas Corpus ("Petition") under the provisions of 28 U.S.C. § 2241.  (Doc. 1.)  He also filed a supporting Memorandum of Law.  (Doc. 2.)

Jernigan challenges the Federal Bureau of Prisons ("BOP")'s reduction of the duration of his placement in a Residential Reentry Center ("RRC") from six (6) months to sixty (60) days after he was found guilty of misconduct charges.  (*See* Doc. 2 at 1.)  He also claims that the BOP failed to comply with the Federal Prisoner

Reentry Initiative, codified at 42 U.S.C. § 17541, which requires the BOP to create an incentive program, and provides that one of the incentives may be the placement of an inmate in an RRC for the maximum allowable period. (*See* Doc. 1 at 6-7; Doc. 2 at 3-4, 6-10.) Specifically, Jernigan claims that the BOP failed to explain to him how incentive programs work or how to participate in them and attributes this lack of an explanation to a failure to develop an incentive program. (*See id.* at 3, 8-9.)

As relief, Jernigan requests that this Court declare that the BOP has failed in its duties, direct the BOP to consider him for RRC placement pursuant to the proper criteria set forth in 18 U.S.C. § 3624(c), and order LSCI Allenwood to provide him with a twelve (12) month RRC placement. (*See* Doc. 2 at 10.)

By Order dated July 5, 2011, service of the Petition was directed, and Respondent was directed to answer the Petition within twenty-one (21) days. (Doc. 4.) On July 26, 2011, Respondent filed a Response to the Petition (Doc. 5) along with supporting exhibits[1] (Doc. 5-1), and supporting authority (Docs. 5-2, 5-3). Although our July 5 Order provided Jernigan with an opportunity to file a reply brief (*see* Doc. 4

---

[1] Respondent submitted the Declaration of Correctional Treatment Specialist Daniel Thomas (Doc. 5-1 at 3-7), which is supported by the following attachments: the April 14, 2008 BOP Guidance Memorandum (*id.* at 9-18); BOP Program Statement 7310.04, *Community Corrections Center Utilization and Transfer Procedure* (*id.* at 20-48); Petitioner's Inmate Discipline Data as of 7/8/2011 (*id.* at 50); the BOP's 12/9/2010 RRC Consideration/Re-Consideration of Petitioner (*id.* at 52); 10/21/2008 Interim Regulations (*id.* at 54-57); the 6/24/2010 BOP Revised Guidance Memorandum (*id.* at 59-64); Petitioner's Admission and Orientation Program Checklist (*id.* at 66); and Petitioner's 11/15/2010 Inmate Screening Form (*id.* at 67).

at 2 ¶ 4), no reply brief was filed.  Accordingly, the Petition is fully briefed and ripe for disposition.  For the reasons set forth below, the Petition will be denied.

## I.     FACTUAL BACKGROUND

On March 3, 2003, Jernigan was sentenced in the United States District Court for the Western District of Kentucky to a thirty-six (36) month term of imprisonment for possession with intent to distribute marijuana and cocaine; aiding and abetting; and felon in possession of a firearm.  (Doc. 5-1 at 3, Thomas Decl., ¶ 2.)  Jernigan has been incarcerated at LSCI Allenwood since November 15, 2010, and his projected release date is February 10, 2012, via good conduct time release.  (*Id.* at 4 ¶ 3.)

On April 9, 2008, subsequent to Jernigan's sentencing, the Second Chance Act of 2007, Pub.L. No. 110-199, Title II, § 251, 122 Stat. 657, 692 (the "Second Chance Act"), codified at 18 U.S.C. §§ 3621, 3624, was signed into law.  The Second Chance Act increases an inmate's eligibility for pre-release placement in an RRC from six (6) to twelve (12) months and requires the Bureau of Prisons ("BOP")  to make an individual determination that ensures that the placement is "of sufficient duration to provide the greatest likelihood of successful reintegration into the community."  18 U.S.C. § 3624(c)(6)(C) (Apr. 9, 2008).  In accordance with the statute, regulations were issued within ninety (90) days of the date of the enactment of the Second Chance Act, to ensure that placement in a community correctional facility by the BOP is

conducted in a manner consistent with section § 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community.  18 U.S.C. § 3624(c).  Section 3621(b) states as follows:

> (b) Place of imprisonment. - - The Bureau of Prisons shall designate the place of the prisoner's imprisonment.  The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering - -
>
>     (1) the resources of the facility contemplated;
>
>     (2) the nature and circumstances of the offense;
>
>     (3) the history and characteristics of the prisoner;
>
>     (4) any statement by the court that imposed the sentence **- (A)** concerning the purposes for which the sentence to imprisonment was determined to be warranted; or (B) recommending a type of penal or correctional facility as appropriate; and
>
>     (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28 . . .
>
> . . . Any order, recommendation, or request by a sentencing court that a convicted person serve a term of imprisonment in a community corrections facility shall have no binding effect on the authority of the Bureau under this section to determine or change the place of imprisonment.

18 U.S.C. § 3621(b).

Following the passage of the Second Chance Act, the BOP issued two guidance memoranda dated April 14, 2008 (Doc. 5-1 at 9) and November 14, 2008, both of which required approval from the Regional Director for RRC placements of longer than six (6) months.  Interim regulations passed on October 21, 2008 state that "[i]nmates may be designated to community confinement as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed twelve months." 28 C.F.R. § 570.21(a) (*see* Doc. 5-1 at 54-57, Copy of 10/21/08 Interim Regs.).  Moreover "[i]nmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. § 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community, within the time-frames set forth in this part." 28 C.F.R. § 570.22.  The regulations do not include a requirement that the Regional Director approve pre-release RRC placement beyond six months.

In addition, on June 24, 2010, a revised guidance memorandum was disseminated to provide BOP staff with new guidance on RRC placements. (Doc. 5-1 at 59-64.)  In particular, BOP staff were reminded that "all" inmates are statutorily eligible for up to twelve (12) months of pre-release RRC placement. (*See id.* at 59-60.)  However, the memo also advised that "not all inmates are appropriate for RRC placement, and for those who are appropriate, the length of the RRC placement must

be determined on an individual basis in accordance with this guidance." (*See id.* at 60.)  In providing guidance as to inmates who are inappropriate for RRC placement, the memorandum states, "[s]imilarly, inmates with recent serious, or chronic misconduct and those who have previously failed an RRC program may be inappropriate." (*See id.* at 61.)

Recommendations for RRC placements ordinarily are reviewed with the inmate and the Unit Team seventeen (17) to nineteen (19) months before each inmate's probable release date.  (*See* Doc. 5-1 at 4, Thomas Decl., ¶ 4.)  Referrals are then forwarded to the Community Corrections Manager ("CCM") at least sixty (60) days prior to the maximum recommended range or date.  (*See id.* ¶ 5 (citing BOP Program Statement ("P.S.")  7310.04, *Community Corrections Center Utilization and Transfer Procedures*) (*see* Doc. 5-1 at 32).)

Prior to Jernigan's arrival at LSCI Allenwood on November 15, 2010, he was approved for an RRC date of June 27, 2011.  (*See* Doc. 5-1 at 5, Thomas Decl., 9.)  However, on August 31, 2010, he incurred an incident report for possessing a hazardous tool in violation of disciplinary code 108, and for being in an unauthorized area in violation of disciplinary code 316.  (*See id.*)  Specifically, Jernigan was found in possession of a cell phone and was using the phone to post messages on an Internet Face Book page, circumventing the Inmate Telephone System.  (*See id.*)  In addition,

6

he was found running toward an unauthorized area, away from the Inmate Dormitory at midnight, while he was confined at the Satellite Camp in Big Sandy, West Virginia. (*See id.*)

Due to the severity of Jernigan's actions, following his arrival at LSCI Allenwood, staff recommended to the Community Corrections Manager that he receive only a sixty (60) day maximum RRC placement. (*See* Doc. 5-1 at 52, 12/9/2010 RRC Consideration/Re-Consideration.) After reconsideration of all factors relevant to Jernigan's individualized review, on December 9, 2010, Jernigan was recommended for an RRC term of sixty (60) days. (*See id.*; Doc. 5-1 at 6, Thomas Decl., ¶¶ 10-12.) He is scheduled to begin his RRC placement on December 13, 2011. (*See id.* ¶ 13.)

In addition to a consideration of the five statutory factors contained in 18 U.S.C. § 3621(b), an inmate's institutional programming, and specifically, his participation in or completion of Inmate Skills Development programs, is considered separately and apart to determine if additional RRC time is warranted as an incentive under 42 U.S.C. § 17541. Section 17541, which is entitled Federal prisoner reentry initiative, and is a provision of the Second Chance Act, requires the BOP to "provide incentives for prisoner participation in skills development programs." 42 U.S.C. § 17541. One such incentive may, "at the discretion of the [BOP]" include "the

maximum allowable period in a community confinement facility." 42 U.S.C. § 17541(a)(2)(A).

Upon his arrival at LSCI Allenwood, Jernigan attended the mandatory Admissions and Orientation ("A&O") presentations. (*See* Doc. 5-1 at 6, Thomas Decl., ¶ 14.) At that time, he received his A&O handbook, which contains incentive program explanations. (*See id.*) In addition, on December 2, 2010, Jernigan signed the A&O completion sheet, attesting to the fact that he was present for each presentation by each department head at the prison. (*See id.*; Doc. 5-1 at 66, Jernigan's A&O Program Checklist.) At the time of the reconsideration of Jernigan's RRC placement on December 9, 2010 (*see* Doc. 5-1 at 52), his institutional programming was reviewed separately and apart from 18 U.S.C. § 3624(c) to determine whether additional RRC time was warranted as an incentive under 42 U.S.C. § 17541. (*See* Doc. 5-1 at 6, Thomas Decl., ¶ 12.)

## II. DISCUSSION

Section 2241 "confers jurisdiction on district courts to issue writs of habeas corpus in response to a petition from a state or federal prisoner who 'is in custody in violation of the Constitution or laws or treaties of the United States.'" *Coady v. Vaughn,* 251 F.3d 480, 484 (3d Cir. 2001). The federal habeas statute also requires that the petitioner be in custody "under the conviction or sentence under attack at the

time his petition is filed." *Lee v. Stickman,* 357 F.3d 338, 342 n. 3 (3d Cir. 2004) (quoting *Maleng v. Cook,* 490 U.S. 488, 490-91 (1989)).

Section 2241, unlike other federal habeas statutes, "confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence." *Coady,* 251 F.3d at 485 (quoting 28 U.S.C. §§ 2241(a) and (c)(3)). This includes a challenge to the BOP's decision to exclude an inmate from release to an RRC. *Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 242-44 (3d Cir. 2005) (quoting *Jiminian v. Nash*, 245 F.3d 144, 147 (2d Cir. 2001)).

As set forth above, the BOP exercises its authority pursuant to the Second Chance Act to determine individual inmate placements to an RRC by applying the five (5) factors set forth in 18 U.S.C. § 3621(b). In various other cases in this District where, as is the situation here, an RRC placement decision was made after the issuance of the BOP's October 21, 2008 regulations, other Members of this Court consistently have concluded that the Second Chance Act affords the BOP discretionary authority to transfer an inmate to an RRC for *up to* twelve (12) months prior to the inmate's release date after consideration of the factors set forth in 18 U.S.C. § 3621(b). *See Ogman v. Ebbert*, Civil No. 3:10-CV-1342, 2010 WL 4922889, at *3 (M.D. Pa. Nov. 12, 2010) (Report & Recommendation)(Blewitt, J.), *approved and adopted*, 2010 WL 4922883 (M.D. Pa. Nov. 29, 2010) (Munley, J.); *Berlin v.*

*Bledsoe*, Civil No. 1:10-CV-1092, 2010 WL 3528571, at *4 (M.D. Pa. Sep. 8, 2010) (Rambo, J.); *Cullum v. Bledsoe*, Civil No. 1:09-CV-2385, 2010 WL 2521035, at *4 (M.D. Pa. Jun. 15, 2010) (Connor, J.); *McDonald v. Obama*, Civil No. 1:10-CV-0379, 2010 WL 1526443, at *6 (M.D. Pa. Mar. 15, 2010) (Report & Recommendation) (Carlson, M.J.), *approved and adopted*, 2010 WL 1526447 (M.D. Pa. Apr. 15, 2010) (Caldwell, J.); *Wires v. Bledsoe*, Civil No. 3:09-CV-2247, 2010 WL 427769, at *4 (M.D. Pa. Feb. 3, 2010) (Munley, J.) (finding that the record clearly established that the petitioner's unit team gave petitioner individualized consideration for RRC placement consistent with the five factors of section 3621(b)).

In the instant case, it is apparent from the record that, in reconsidering Jernigan's RRC placement upon his arrival at LSCI Allenwood in light of his having been found guilty of misconduct charges, Jernigan received individual review of the five statutory factors contained in 18 U.S.C. § 3621(b). (*See* Doc. 5-1 at 5, Thomas Decl., ¶ 11; Doc. 5-1 at 52, 12/9/2010 RRC Consideration/Re-Consideration.) Jernigan's institutional programming and adjustment, education level, disciplinary record, prior criminal record, work history, residency issues, and circumstances of his current offense were taken into consideration. (*See id.*) The comments accompanying the decision reflect that the recommendation for a sixty (60) day RRC placement was based upon Jernigan's "job skills as a self taught Electrician, family ties, economic

resources, and his poor institutional adjustment." (*See* Doc. 5-1 at 52.)  In his memorandum of law, Jernigan voices his disagreement with the BOP's assessment of these factors, and specifically disputes that he is a self-taught electrician, that he has any family ties in Kentucky, where the RRC to which he will be released is located, and that he has economic resources.  (*See* Doc. 2 at 2.)  However, he fails to provide any evidence that the BOP abused its discretion in its consideration of these factors in determining the length of his RRC placement.  Moreover, contrary to his claim that the BOP lacked authority to reconsider his RRC placement recommendation after he was found guilty of misconduct, the June 24, 2010 Revised Guidance Memorandum specifically directs BOP staff to consider that inmates who have "recent, serious, or chronic misconduct and those who have previously failed an RRC program may be inappropriate" for RRC placement.  (*See* Doc. 5-1 at 61.)  Thus, the reconsideration of Jernigan's RRC placement following his having been found guilty of using a cell phone to access Face Book and of running to an unauthorized area in the middle of the night was entirely appropriate.

In addition, it is apparent from the record that, contrary to Jernigan's assertion that the BOP failed to comply with the Federal prisoner reentry initiative by implementing an incentive program, and therefore LSCI staff were unable to explain how the incentive program works or how to participate (*see* Doc. 2 at 3, 8), incentives

11

*are* offered at LSCI Allenwood. Jernigan was advised of these incentives during his orientation when he was provided with an A&O Handbook, which contains explanations of the incentives, and when he attended presentations by each department head at the prison, as reflected by his signing of the A&O completion sheet. (*See* Doc. 5-1 at 6, Thomas Decl., ¶ 14; Doc. 5-1 at 66, Jernigan's A&O Checklist.) Further, contrary to Jernigan's assertion that he did not receive any consideration under the Federal prisoner reentry initiative (*see* Doc. 2 at 6), it is apparent from the record, as declared by Case Manager Thomas, that Jernigan's institutional programming was reviewed separately and apart from 18 U.S.C. § 3624(c) to determine whether additional RRC time was warranted as an incentive under 42 U.S.C. § 17541. (*See* Doc. 5-1 at 6, Thomas Decl., ¶ 12.) Thus, it is apparent that Jernigan received appropriate consideration for any incentive award applicable under § 17541.[2] Consequently, there is no merit to Jernigan's arguments with respect to the availability of incentives at LSCI Allenwood, the dissemination of

---

[2] Notwithstanding the fact that it is apparent from the record that Jernigan received consideration as to whether additional RRC time was warranted as an incentive pursuant to 42 U.S.C. § 17541, we observe that, although § 17541 suggests maximum RRC placement as an incentive, it does not *require* the BOP to make it an incentive. Rather, § 17541 gives the BOP wide discretion to create incentives for inmates who complete inmate skills development programs. As the United States Court of Appeals for the Third Circuit recently held, "Although the [SCA] . . . requires the Attorney General and the Director of the Bureau of Prisons to establish incentives for prisoner participation in skills development programs, the statute does not require that any particular incentives be given." *Richardson v. Director for Federal Bureau of Prisons*, 2011 WL 2559423, at *1 (3d Cir. Jun. 29, 2011) (nonprecedential).

information about those incentives, and the consideration he received for any applicable incentive award in reconsidering his RRC placement.

### III.     CONCLUSION

For the foregoing reasons, the Court rejects Jernigan's contention that "the BOP has failed in its duties" in its consideration of his RRC placement either under the factors set forth in 18 U.S.C. § 3621(b), or in considering whether Jernigan was eligible for an incentive award of additional RRC time under 42 U.S.C. § 17541, and thus the Petition will be denied. An appropriate Order will enter on today's date.